Opinion of the Court by
Chief Justice Bibb.
In March, 1820, Thomas Cummins, John Battershall, Isaac Atchley and Emily his wife, Henry M’Cart. jun. and Priscilla his wife, and Matilda Smith, the said Henry, Priscilla and Matilda, being infants, prosecuting by said Thomas their next *98 friend, exhibited their bill against William Latham, to have relief against judgments in ejectment, and for mesne profits and to be restored to possession, to have a conveyance of the elder title, and for general relief upon the matters stated in their bill.
Complainant’s derivation of claim.
Ejectment was against the husband of the widow of the former owner, and his heirs they being within age and part living with the mother and step father.
Action for the mesne profits; also against the step father.
Additional parties made.
Complainants derive their equity under a head right certificate.
The said Cummins and Battershall claim the shares of Wm. Smith, Polly Smith, now Polly Atchley, wife of Joseph Atchley, and Elizabeth Smith, by deed of the 26th October, 1819.
Latham’s judgment in ejectment was recovered in 1817, whilst all Smith's heirs were under disabilities of infancy or coverture; the declaration in ejectment was not served on either of the heirs, although some of them lived with Battershall and wife on the farm.
The complainants claim the land under Robert Smith, who died in 1804, leaving the following children his heirs at law: Emily, Priscilla, Elizabeth, William and Polly, all infants at his death, (of these, Emily, Priscilla, Matilda, are complainants.) leaving a widow also, who afterwards married the complainant Battershall.
The action for mesne profits was against Battershall, the husband of Smith’s widow, who, from the time of his intermarriage, had occupied the farm on which the said Hebert Smith had lived and died, until he was evicted by Latham.
Upon an objection started by the answer of Latham, that the deed to Cummins and Battershall did not convey the interest of the said co heirs, William, Polly, and Elizabeth, because of the adverse possession of Latham at the time, the complainants amended the bill, and made those heirs and grantors defendants, who answered, and consented that their rights might be decreed to said Cummins and Battershall.
The complainants derive their equity under the certificate, granted by the county court of Clarke, to Robert Smith, on satisfactory proof to them, that he had actually settled the land, and was entitled to 400 acres, under the act of the legislature of Kent *99 ucky, respecting the settlement and improvement of vacant lands.
Entry of Robert Smith. Clarke county court.
Survey and grant.
Defendant’s claim.
Complaint's groun of claim and objections to the defendant’s title.
Omitting the formal parts of the certificate, and the adjudication of the county court, the location will appear thus:
July Court, 1802.
Robert Smith is entitled to 400 acres of land, who located the same on the waters of the Dryfork of Howard's creek, as follows: Beginning at John Wilkerson’s north corner of his 1000 acre survey, on the head of upper Howard’s creek, and run with his line south east, forty poles, and from the same beginning, north west 213 poles, at right angles for quantity.”
Of this, 277 acres were surveyed on the 15th of September, 1802, and thereupon, a grant issued to Robert Smith on the 15th July, 1819.
The defendant claims by a grant issued in due form from the land office, bearing date on the 23d, May, 1815, to William Latham, assignee of Ralph Morgan, who was assignee of John M'Intire.
This survey was executed on the 13th September, 1814, for Ralph Morgan, assignee of John M'Intire.
The entry of M’Intire bears date on the 17th July, 1783, for 1000 acres, “on a branch of Red river, that heads nearly east and runs nearly west,” &c.
1. The complainants assert the validity and legality of Robert Smith’s claim, as a superior equitable title.
2. They attack the entry of M'Intire as vague and uncertain.
3. They impeach the survey of, and grant thereon, as fraudulent and void, as well, because the survey has been fraudulently made, without or contrary to the entry, so as to include the improvements and prior claim of Smith and his heirs, as because the survey was executed, after the time for survey and such entries had expired, and especially charge, that said M'Intire and Morgan, were not within *100 any of the exceptions of the statutes limiting the time for surveying.
Settlement and improvements of complainant’s claim.
Statute authorizing the county courts to grant head rights, was not confined to the Green river country.
Proofs of the objects called for in the location.
Smith’s entry adjudged sufficient.—Call for the line of another claim as a part of the base line of the entry, determines itself without an expression of it that the land shall lie on the other side the line, and not upon the other claim.
1st. The proof is clear, that Smith had actually settled and improved the land before he obtained his certificate, that he continued to reside on it until his death, that his widow and children continued to reside on it until evicted by Ladiam, the ancestor and his representatives having made, during their residence, valuable and lasting improvements.
The act of assembly authorised the county courts of the state, to grant settlement rights, and did not confine the claims to the lands south of Green river, so that the grant by the county court of Clarke, to Smith, was authorised by law.
The notoriety of Howard's creek, the dry fork of Howard’s creek, and of Wilkerson’s survey of 1000 acres, which includes some of the waters of that fork; that Wilkerson’s lines and corners could have been found by ordinary search and inquiry, are facts proved clearly and past doubt; the evidence as to these facts, goes back to periods long before Smith’s certificate, and comes up to the time of taking the depositions. Even the knowledge of the particular corner called for is proved at a period anterior to Smith’s certificate.
The call of Smith, to run with Wilkerson’s line, from his north corner, south east, is according to the truth and the fact. so that 40 poles on that line of Wilkerson’s, and 213 poles from the same corner north west, gives a right line of 253 poles, as the base of Smith’s 400 acres. At right angles to that line is specially descriptive of the tract intended when connected with the call of 40 poles with Wilkerson’s line. This ascertains on which side of the base the survey is to he executed, because if it were made on the south or south western side of the base, it would run in upon Wilkerson’s survey. Such an interference is forbidden as against the intent of the locator, and would be contrary to former adjudications. The survey of 277 acres included the settlement and improvement; and so far as it falls within the rectangular figure upon the base of 253 poles *101 for 400 acres, as just described, the survey is conformable to location.
Act for granting settlement rights.
Limitation for obtaining the warrants repealed.
Acts in relation to making the surveys, paying the state price and obtaining the grants.
As to the alleged forfeiture.
Grant issued after grantees death, enures to his heirs.
The act of 1800, (2 Litt. L. K. 420, 2 Dig. 752,) authorised the granting of certificates for 400 acres, by the county courts. The eighth section of that act declared the penalty for not performing within due time, the requisitions as to the certificate and warrant.
The act of 19th December, 1801, 2 Litt. 459, 2 Dig. 754, repealed the 8th section of the act of 1800, and allowed two years from the passage of the act to obtain the warrant.
The act of 1802, 3 Litt. 79, 2 Dig. 755, provided for, and allowed a survey of the whole or any part upon the certificate without a warrant.—The act of 23rd. December, 1803, 3 Litt, 132-134. 2 Dig. 755-6, permitted a survey of the whole or any part of the land called for in the certiorate; a survey was authorised on the certificate alone, and such survey returned to the Register's office, and the price paid with interest, entitled the party to a grant—the former laws coming within the purview of this act were repealed.
This Act of 23d. December 1803, gave installments to pay the price; authorised either the making of surveys, or return of plats and certificates to the Register’s office, “until the time shall expire for the payment of the last instalment,” and so much of any act, or acts, as expressed, or implied, a forfeiture for non-payment of the state price, on any Sands taken under any of the acts for granting the vacant lands of this commonwealth, were repealed.
By various other statutes, the payment of the, instalments have been postponed to a period long after the date of the patent to complainants.
By these various acts, the suggestion of forfeiture of the claim of Smith, alluded to in the answer, in general terms, is repelled.
The grant which issued to Robert Smith after his death, instead of to his heirs, is protected by the *102 statute of Kentucky and enures to the benefit of the heirs.
Entry of McIntire condemned on its own face.
McIntire's claim was forfeited because not surveyed in the time prescribed, 2 Littell Rep. 363.
Has equity jurisdiction to relieve against a judgment in ejectment recovered on elder patent, but void because not surveyed in time, on the common ground of the superior entry?
*102 Thus the certificate, survey and grant to Smith, the ancestor, is conformable to law, and was a valid claim in equity, originating long before the date of the patent to the defendant Latham.
2nd. The entry of M’Intire upon which the survey for Morgan, and the grant to Latham, arc founded, need not be recited; it is one of that class of entries which on its face is void for uncertainty. No attempt has been made to support it; even the “branch of Red river,” called for, is kept out of view. The. entry of M’Intire cannot overreach Smith’s certificate and survey.
3rd That the survey and patent of the defendant, is fraudulent in law and in fact, so far as it has been made to conflict with Smith’s settlement survey of 277 acres, falling within the rectangular figure of his four hundred acres, as located and explained heretofore, is clear. The entry of M'Intire was vague; it called to lie on a branch of Red river, on which, to begin “a piece above” a beech tree, marked I. L. and to “run down the creek mostly on the right hand side, so as to include the quantity of waste land.” The survey was made under color of such vague description, entirely off that creek, so as to include the actual domicile improvements and prior valid location and survey of Smith and his heirs. This is the same survey and grant which was declared void in the case of Atchley vs. Latham, 2 Litt. 362, because it had been made after the time for surveying had expired.
4th. Hence a fourth question is propounded, whether a court of equity has jurisdiction to relieve against this patent, when upon the facts which are proved in this cause, a court of law was competent to declare Latham’s grant void, and to give the complainants remedy to recover the possession in ejectment.
Had the complainants chosen to rest their application for relief, upon the specialty of their ancest *103 or’s location and the conformity of their survey and patent to the location, and to the laws, as opposed to the vagueness of the defendant’s entry, asking to be relieved against an elder grant obtained to the prejudice of their prior equity, it would have been a case familiar and consistent with the every day’s usage of courts of equity in granting relief. The argument, is, that because the survey of Latham has been obtained contrary to the acts of limitation for surveys, and because the statute has imperatively pronounced the grants in such cases void, that the complainants shall go to the courts of law; that a defence at law by Battershall, when sued in ejectment, might have prevailed—that having failed to defend at law, he shall not come into equity.
Equity and law have concurrent jurisdiction of frauds.
Equity can give the more complete relief.
Jurisdiction given by statute, of a subject of which equity before had the exclusive cognizance shall be construed; concurrent, not exclusive jurisdiction.
*103 Courts of law and courts of equity have concurrent jurisdiction of frauds; a failure in such cases of concurrent jurisdiction, to defend at law, is no bar to relief in equity. The answer does not pretend that the defence was made at law. Moreover, it is clear that the equitable right of the complainants order their location as now asserted, could not have been tried at law. The defence would have been confined to the forfeiture of M’Intire’s entry for want of a survey made within, the period of limitation.
But the grant to Latham is of public record. Apparently it is of force, of elder date, a prior legal title. As the oral proof may or may not be accessible at law, this grant may or may not prevail. One ejectment after another may follow in the train of success by the one party or the oilier. Chancery at last must be resorted to, to give complete, and final redress. The powers of a court of chancery can alone repeal the patent, cancel its effect, blot it as it were from the record, by uniting and merging it in the prior equity.
But for the statute declaring such patents void, and thereby giving to the courts of law jurisdiction, the courts of equity would have had complete, unquestioned and sole jurisdiction. Does the statute which gives to courts of law cognizance in such ca *104 ses, negative and exclude the courts of equity from their accustomed and appropriate jurisdiction? It seems more proper to say, that as the statute has not negatived the former jurisdiction of courts of equity, it has done no more than to give to the courts of law a concurrent, not an exclusive jurisdiction.
Cases of fraudulent gifts, bargains and sales, &c.
Equity will entertain jurisdiction on the bill of a party claiming adversely to a grant void because the survey was not in time but will relieve no farther than the complainant shews his own equitable right.
When equity has jurisdiction to enjoin the judgment in ejectment, it has also to enjoin that for the mesne profits.
Fraudulent gifts, bargains and sales, maybe avoided by proof at law. Yet courts of equity have jurisdiction to remove obstructions created by fraudulent deeds and conveyances. The sentence of a court of law avails only within a small circle; the powers of a court of equity are adequate to give the supplement, and end the litigation.
In sustaining the equity jurisdiction, we do not mean to convert the proceedings into a forfeiture bill. We do not mean to relieve beyond the equitable claim of the complainants, under the certificate and survey of Smith. If that survey as made, has extended beyond the bounds of the location, we do not mean to give the complainants title to the excess by forfeiture of Latham’s patent. We mean to act upon the accustomed rules of giving relief in favor of a prior equity against an eider patent, and to repel the conclusion to which the objection to jurisdiction seems to lead, namely, that by the double offence against the laws as to special locations and limitations for surveying, against the rules of equity and the rules of law, the patent of Latham has escaped the powers of a court of equity. If the complainants can grope their way in chancery by a scire facias, to repeal Latham’s patent in toto. for the benefit of the Commonwealth, be it so. But this is a suit in equity, wherein the complainant must be. relieved upon his own equitable right, and not upon the mere illegality of his adversary’s patent.
5th. Connected with this, a fifth question is presented, as to the relief against the judgment for mesne profits consequent upon the judgment in ejectment. The mesne profits are incident to, and hang upon the right to the land. The rule in equity is, that jurisdiction as to the principal subject, gives jurisdiction over all the incidents. The judg *105 ment for mesne profits to the extent of the equitable right of the complainants as declared in the premises ought to be enjoined.
If part of the owners of the equitable right in land have sold to another, they need not be complainants in a bill for relief against the elder grant; but may be made defendants if necessary to have them before the court.
An exception to the law against sales of land in adverse possession tho’ not a Virginia claim.
Decree and mandate—Survey of Smith’s entry directed.
6th. A sixth question is presented in the answer, because of the deeds to some of the complainants from some of the heirs of Smith, whilst Latham was in adverse possession by virtue of his writ of possession.
This amounted only to an objection for want of all parties necessary to a conclusive decree upon the conflicting claims. That is answered by the amendment making those heirs defendants, and by their answers. Some of the complainants were heirs and had aright to prosecute the suit—the other heirs did not choose to join as complainants because they had bargained their claims to others who were complainants; but these heirs had not forfeited their interests; and whether they were before the court as complainants, a king relief for themselves, or as defendants, yielding their assent to the relief sought by the complainants, is not of importance.
The attitude and circumstances in which those alienees stood in relation to the other complainants, and to the equitable title conveyed to them by those deeds, and to the ejectment and judgment for mesne profits complained of, seem to except their case out of the reason of the common law against buying and selling pretence titles, and of the statutes against maintenance.
Upon the whole, it is decreed and ordered, that the decree of the circuit court be reversed; that the cause be remanded, with directions to that court to sustain the bill of the complainants, and decree a release to them from the defendant Latham, for so much of the land included in his elder grant as shall be found to be common to the survey of Robert Smith, for 277 acres as carried into grant, and to the location of the certificate granted to said Smith when surveyed according to the location from Wilkerson’s north corner, running with his line south east, forty poles, and from the same beginning north west 213 poles, and from the extremities of that base *106 at right angles thereto, on the northwardly side of the base (not interfering with said Wilkerson’s survey,) so far that a line parallel to the base, will give the quantity; that the possession thereof be restored to the complainants; that the injunction against the mesne profits be measured and accommodated to the rights of the complainants to the land and improvements when thus ascertained, and make such farther decree thereupon, as to equity shall appertain.
Hanson, for plaintiff,
It is farther decreed and ordered, that the defendant Latham pay to the complainants their costs in this court, and in this behalf expended.